UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACEY AMARAL,<br><br>    Plaintiff,<br><br>    v.<br><br>MIRIAM BELOGLOVSKY, et al.,<br><br>    Defendants. | No. 2:23-cv-02378-DAD-AC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND GRANTING IN PART LEAVE TO AMEND<br><br>(Doc. No. 9) |

This matter came before the court on February 6, 2024 for a hearing on a motion to dismiss plaintiff's complaint filed by defendants Miriam Beloglovsky, Los Rios Community College District, and Consumnes River College on November 22, 2023. (Doc. No. 9.) Attorney James Arrasmith appeared by video on behalf of plaintiff Lacey Amaral and attorney Kellie Murphy appeared by video on behalf of defendants. (Doc. No. 18.) For the reasons explained below, defendants' motion to dismiss will be granted. Plaintiff will be granted leave to amend as to certain of her claims.

## BACKGROUND

Plaintiff filed her operative complaint initiating this action on August 22, 2023 in the Sacramento County Superior Court. (Doc. No. 1 at 1.) Defendants removed this action to this federal court on October 18, 2023. (*Id.*) In her complaint, plaintiff alleges as follows.

1

1  Plaintiff enrolled at defendant Consumnes River College ("defendant College") in
2  August 2016. (*Id.* at 7.) Plaintiff suffers from several disabilities including autism, depression,
3  anxiety, attention deficit hyperactivity disorder, obsessive-compulsive personality disorder,
4  stress-induced IBS, consistent suicidal ideations, and gastroparesis. (*Id.* at 9.) Beginning in
5  January 2019, plaintiff began receiving academic accommodations through the Disability Support
6  Programs and Services office ("DSPS") at defendant College. (*Id.* at 10.) At the start of each
7  semester, a "Letter of Accommodation" outlining a disabled student's approved accommodations
8  is sent by DSPS to the student's professors, after which the student and each professor meet to
9  discuss implementation of the accommodations. (*Id.*)

10  Defendant Beloglovsky was plaintiff's professor for the semester beginning in January
11  2022, which was scheduled to be plaintiff's final semester. (*Id.* at 9.) Had plaintiff passed her
12  classes that semester, plaintiff would have graduated with several degrees. (*Id.*) On January 13,
13  2022, DSPS sent a Letter of Accommodation ("the Letter") to defendant Beloglovsky explaining
14  plaintiff's required accommodations for that semester. (*Id.* at 10.) The Letter mandated that
15  plaintiff be given the following accommodations: "(a) Alternate test location at DSPS; (b)
16  Extended time for quizzes and tests, including online courses (1.5x); (c) Distraction reduced test
17  setting; (d) Preferential seating (i.e., front of the class); (e) Stand/move classroom periodically; (f)
18  Bathroom access; (g) Audio book." (*Id.* at 10–11.) The Letter said that implementation of the
19  accommodations was a "shared responsibility" between plaintiff and her professors. (*Id.* at 11.)
20  Plaintiff's disability accommodations were essential to plaintiff's success in her courses. (*Id.*)

21  On January 14, 2022, plaintiff emailed the Letter to defendant Beloglovsky. (*Id.*) On
22  January 19, 2022, plaintiff asked to schedule a meeting with defendant Beloglovsky to discuss
23  plaintiff's accommodations. (*Id.* at 12.) Defendant Beloglovsky declined this request "until
24  Office Hours on January 24, 2022, which was approximately a week after the semester had
25  commenced and at a juncture when assignments were already due." (*Id.*) At that meeting,
26  defendant Beloglovsky made it clear that her general practice was not to offer necessary
27  accommodations to students and refused to implement plaintiff's accommodations. (*Id.* at 12–
28  13.)

Plaintiff was then directed through a maze of college bureaucrats. (*See id.* at 13–16.) On January 24, 2022, the same day as the meeting with defendant Beloglovsky, plaintiff emailed Emilie Mitchell, the Interim Dean of Social and Behavioral Sciences at defendant College, about defendant Beloglovsky's refusal. (*Id.* at 13.) Mitchell was initially supportive of plaintiff but later said plaintiff would need to escalate the matter to higher authorities. (*Id.*) The next day, January 25, 2022, plaintiff contacted Rachel Larsen, Administrative Assistant to the President of defendant College, who directed plaintiff to Robert Montañez, Vice President of Instruction and Student Learning at defendant College. (*Id.* at 14.) Montañez suggested plaintiff file a formal complaint about defendant Beloglovsky's conduct and referred plaintiff to Joan Ramirez, Interim Dean of Student Services and Enrollment Management at defendant College. (*Id.*) Ramirez presented plaintiff with a "Student Grievance Form," which plaintiff filed on January 31, 2022. (*Id.*) After all of this, plaintiff was informed that the student grievance form was intended for grade disputes and not professor behavior, and that defendant College had no protocol for handling grievances regarding a professor's refusal to implement disability accommodations. (*Id.* at 15.) Plaintiff's grievance was denied on February 10, 2022. (*Id.*) Plaintiff then met with Ed Bush, President of defendant College, on February 17, 2022 and with Tadael Emiru, Associate Vice President of defendant College, on February 20, 2022. (*Id.* at 15–16.) Both told plaintiff "that nothing could be done." (*Id.*)

Plaintiff's grades suffered due to the lack of accommodations and the excessively time-consuming process of navigating the college bureaucracy. (*Id.* at 16–17.) At no point did defendant Beloglovsky provide plaintiff with her required accommodations, including audio-book compatible materials and extra time on exams. (*Id.* at 16.) Defendants' conduct precipitated a severe deterioration in plaintiff's mental health and exacerbated her pre-existing medical conditions. (*Id.* at 18.) Plaintiff's medical appointments and associated medical expenses rose markedly, and the increasingly frequent medical appointments took even more time away from her studies. (*Id.*) At the end of the Spring 2022 semester, plaintiff, who had previously maintained a 3.28 grade point average, lost her financial aid and failed or withdrew from each of her classes. (*Id.* at 19–20.) She was thus unable to graduate, at which point her acceptance to

1  California State University, San Bernardino was rescinded.  (*Id.* at 20.)  Plaintiff's academic and
2  career progress has subsequently stalled.  (*Id.*)
3        In her complaint, plaintiff asserts the following eleven claims against all defendants:
4  (1) disability discrimination in violation of California Government Code § 11135; (2) disability
5  discrimination in violation of the Americans with Disabilities Act ("ADA") Title III, 42 U.S.C.
6  § 12182; (3) breach of contract; (4) intentional infliction of emotional distress; (5) negligence;
7  (6)[1] gross negligence; (7) disability discrimination in violation of the Unruh Civil Rights Act,
8  California Civil Code §§ 51, *et seq.*; (8) disability discrimination in violation of the ADA
9  Title III, 42 U.S.C. §§ 12182, *et seq.*; (9) promissory estoppel; (10) negligent infliction of
10  emotional distress; and (11) negligent hiring and retention.
11        On November 22, 2023, defendants filed their motion to dismiss and motion to strike.
12  (Doc. No. 9.)  Plaintiff filed her opposition to the pending motions on December 15, 2023 (Doc.
13  No. 16), and defendants filed their reply thereto on December 26, 2023 (Doc. No. 17).

## LEGAL STANDARD

15        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
16  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
17  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of
18  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901
19  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to
20  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A
21  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
22  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*
23  *Iqbal*, 556 U.S. 662, 678 (2009).
24        In determining whether a complaint states a claim on which relief may be granted, the
25  court accepts as true the allegations in the complaint and construes the allegations in the light
26  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

---

[1] Plaintiff misnumbers her claims.  (*See* Doc. No. 1 at 27–28.)  The court refers to the claims by their proper numbering, not their misnumbering, throughout this order.

the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

## ANALYSIS

In their pending motion, defendants argue that all of plaintiff's claims must be dismissed. (Doc. No. 9-1 at 12–21.) Defendants also argue that plaintiff's request for punitive damages must be stricken under Rule 12(f). (*Id.* at 22–23.)

**A.     Dismissing Defendant Consumnes River College**

Defendants argue that defendant College is not a separate legal entity from defendant District and that all claims brought against the defendant College must therefore be dismissed. (Doc. No. 9-1 at 21.) In her opposition, plaintiff does not appear to contest the point: "As the public entity [responsible] for ensuring disability access at Consumnes River College, Defendant Los Rios Community College District is a proper party . . . ." (Doc. No. 16 at 10.) However, at the February 6, 2024 hearing, plaintiff's counsel argued that defendant College was in fact a proper party. Plaintiff's counsel, however, provided no authority in support of this argument.

/////

5

The court concludes that defendant College is not a proper defendant. *Cf.* Cal. Ed. Code §§ 72000(a) ("The *district* and its governing board may sue and be sued . . . .") (emphasis added), 70902(a)(1) ("The governing board of each community college *district* shall establish, maintain, operate, and govern one or more community colleges in accordance with law.") (emphasis added), 87706 ("[N]o community college *district*, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any student of the public schools at any time when such student is not in school property . . . .") (emphasis added), 81600 ("The governing board of a community college *district* shall manage and control school property within its district.") (emphasis added).

Accordingly, defendant Consumnes River College will be dismissed from this action.

**B.      Claim 1:  California Government Code § 11135**

California Government Code § 11135(a) provides that "[n]o person . . . shall, on the basis of . . . mental disability [or] physical disability . . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

Plaintiff seeks damages on her § 11135 claim.  Plaintiff argues in her opposition to the pending motion that the California state legislature intended for § 11135 to mimic the ADA, which provides for damages, and that "granting [compensatory] relief furthers state policy goals." (Doc. No. 16 at 9.)

However, California Government Code § 11135 "may be enforced by a civil action for equitable relief . . . ." Cal. Gov. Code § 11139; *see also Fetter v. Placer County Sheriff*, No. 2:12-cv-02235-MCE-EFB, 2017 WL 896275, at *3 (E.D. Cal. Mar. 6, 2017) ("Section 11139 sets out the remedy for any violations of § 11135:  'a civil action for equitable relief.'  Plaintiff seeks only damages, and so his claim fails."); *Sharkey v. O'Neal*, 778 F.3d 767, 771 n.5 (9th Cir. 2015) ("The principal difference between section 11135 and [ADA] Title II is that the former statute 'may be enforced by a civil action for equitable relief,' whereas under the latter statute, a plaintiff may recover compensatory damages . . . .").

6

1    Accordingly, plaintiff's § 11135 claim for damages will be dismissed without leave to
2    amend.

### C. Claims 2 and 8:  ADA Title III

Plaintiff brings two claims under Title III of the ADA.  Title III prohibits disability discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Public accommodations are defined as "private entities" including "undergraduate or postgraduate private school[s]."  42 U.S.C. § 12181(7)(J).

Plaintiff alleges in her complaint that the defendant District operates undergraduate private schools.  (Doc. No. 1 at 22.)  Defendant argues that, as a California community college district, defendant District is a public entity not subject to suit under Title III.  (Doc. No. 9-1 at 12.)  In her opposition, plaintiff acknowledges that "defendants argue that plaintiff cannot assert claims under Title III of the ADA, which regulates private entities.  However, Title II of the ADA specifically governs public entities like the School District."  (Doc. No. 16 at 6) (cleaned up); *see also id.* ("The School District and its colleges are 'public entities' under Title II . . . .").

Plaintiff concedes that defendants are public entities not subject to suit under Title III. Accordingly, plaintiff's ADA Title III claims will be dismissed without leave to amend. However, plaintiff will be granted leave to amend her complaint to include a claim under Title II of the ADA.

### D. Claim 7:  California Civil Code §§ 51, *et seq.* (Unruh Civil Rights Act)

Plaintiff asserts a claim against all defendants under California Civil Code §§ 51, *et seq.* ("the Unruh Act").  Defendants correctly argue in their motion to dismiss that public schools and their employees are not subject to suit under the Unruh Act, which only covers "business establishments."  (Doc. No. 9-1 at 16); *see also Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 684 (2022) (holding that a public school district is not a business establishment and is therefore not subject to the Unruh Act).  Plaintiff did not respond to this argument advanced by defendants in her opposition.  At the February 6, 2024 hearing, plaintiff's counsel withdrew plaintiff's Unruh Act claim.

Accordingly, plaintiff's Unruh Act claim will be dismissed without leave to amend.

7

**E.     Claims 4, 5, 6, 10, and 11:  Tort Claims**

Plaintiff asserts claims for intentional infliction of emotional distress, negligence, gross negligence, negligent infliction of emotional distress, and negligent retention and hiring. Defendants argue in their pending motion that these claims are all barred by California's "educational malfeasance" doctrine.  (Doc. No. 9-1 at 15–16); *see also Chevlin v. L.A. Cmty. Coll. Dist.*, 212 Cal. App. 3d 382, 389 (1989) (affirming the trial court's decision granting a demurrer to plaintiff's negligence claims because "the law refuses to hold a public school system liable to a student who claims he was inadequately educated"); *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1212 (2006) (noting that policy considerations "preclude an action for personal educational injury based on inherently subjective standards of duty and causation"). Plaintiff argues in her opposition that the educational malfeasance doctrine "does not absolve entities of contractual or legal duties concerning accessibility accommodations and nondiscrimination.  Defendants must provide all students the opportunity to meaningfully participate and benefit from academic offerings."  (Doc. No. 16 at 10.)  Plaintiff cites no authority supporting this proposition, which appears directly at odds with the courts' decisions in *Chevlin* and *Wells*.

Plaintiff's tort claims appear to be based entirely on a theory of educational malfeasance. (*See, e.g.*, Doc. No. 1 at ¶ 172 (asserting a claim for negligent hiring against defendant District because it hired defendant Beloglovsky, who "engaged in a series of actions that negatively impacted Plaintiff's educational experience"); *id.* at ¶ 118 (asserting a claim for intentional infliction of emotion distress because "[i]t is extreme and outrageous for an educational institution . . . to fail to implement a disabled student's academic accommodations")).  Moreover, when plaintiff's counsel was asked at the February 6, 2024 hearing whether plaintiff's tort claims were based entirely on defendants' failure to provide a quality education, plaintiff's counsel initially responded in the affirmative.[2]

/////

---

[2]  Plaintiff's counsel later amended his answer to this inquiry after being asked why the tort claims were not then squarely barred by the decisions in *Chevlin* and *Wells*.

Accordingly, plaintiff's claims for intentional infliction of emotional distress, negligence, gross negligence, negligent infliction of emotional distress, and negligent retention and hiring (claims 4, 5, 6, 10, and 11) will be dismissed without leave to amend. *See, e.g.*, *Johnson v. Chapman Univ.*, No. 21-cv-00019-CJC-DFM, 2021 WL 3463897, at *4 (C.D. Cal. Apr. 1, 2021) ("Accordingly, defendant's motion [to dismiss] is granted and plaintiff's breach of contract, negligence, and IIED claims are dismissed with prejudice to the extent they challenge the quality of her education.").

**F.     Claims 3 and 9:  Breach of Contract and Promissory Estoppel**

"To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *Walsh v. West Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).

"Under California law, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting estoppel must be injured by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012).

1.     Application of the Educational Malfeasance Doctrine

Defendants argue that plaintiff's breach of contract and promissory estoppel claims are barred by the educational malfeasance doctrine. (Doc. No. 9-1 at 15–16); *see also Chevlin*, 212 Cal. App. 3d at 390 ("We think it obvious that to permit Chevlin to recover under a breach of contract theory based on educational nonfeasance would be tantamount to permitting her to sue for negligence which is precluded under the *Peter W.* decision. Whether framed as a negligence or breach of contract theory the harm which Chevlin seeks to redress is the same.").

The educational malfeasance doctrine does not bar claims where a plaintiff alleges "not that the defendants provided a *substandard* education, but instead that they (1) offered *no* significant educational services, (2) did, or failed to do, specific, quantifiable acts in violation of their charters or applicable law, or (3) improperly caused students, parents, or guardians to incur monetary charges or overcharges for particular educational materials and equipment supplied by

9

1  or through the defendants." *Wells*, 39 Cal. 4th at 1210–11; *see also id.* at 1212 ("[N]othing in the
2  [educational malfeasance doctrine] precludes a claim that a school operator's claim on state funds
3  was 'false' insofar as the school committed objectively identifiable breaches of . . . promises it
4  made to induce enrollment.  For example, [the educational malfeasance doctrine] does not bar
5  assertions that a school operator failed to provide promised equipment and supplies . . . [or]
6  violated specific rules governing 'independent study' programs . . . so long as such claims do not
7  challenge the *educational quality or results* of the school's programs.").

8       Therefore, to the extent that plaintiff's breach of contract and promissory estoppel claims
9  are premised on allegations that "defendants provided a *substandard* education," those claims will
10 be dismissed without leave to amend.  *Id.* at 1210.

11      However, plaintiff alleges the following "specific, quantifiable" accommodations
12 promised to her by defendant District:  (1) the ability to take exams in an alternate location at the
13 DSPS office; (2) "1.5x" time for exams; and (3) audiobooks.  (Doc. No. 1 at 10–11.)  Plaintiff
14 alleges that she was not given the assigned reading in a format that could be converted into an
15 audiobook, that she was not given the 50% extra time for exams, and that defendant Beloglovsky
16 generally refused to discuss or provide any of plaintiff's accommodations.  (*Id.* at ¶¶ 37, 42–43.)
17 These constitute "objectively identifiable breaches of . . . promises [the school] made to induce
18 enrollment" and are thus clearly not barred by the educational malfeasance doctrine.  *Wells*, 39
19 Cal. 4th at 1212; *see also id.* at 1213 ("[T]he trial court thus erred in concluding that the CFCA
20 cause of action was wholly barred as a claim for 'educational malfeasance.'  We note, however, a
21 single passage of the complaint which alleges that One2One 'fails to provide the education it
22 promises but falsely collects State educational funds as if the education were provided.'  Insofar
23 as this particular allegation seeks to raise issues of the *quality* of education offered by the charter
24 school defendants, or of the academic *results* produced, . . . the allegation is not actionable.");
25 *Johnson*, 2021 WL 3463897, at *4 (granting the defendant's motion to dismiss the plaintiff's
26 breach of contract claim "to the extent [it] challenge[d] the quality of her education" but denying
27 the motion to the extent that it was premised on "specific promises Defendant made her regarding
28 /////

10

academic accommodations including that she would have priority registration, an assigned notetaker, and 'time and one half' on exams and quizzes.").

### 2. Requirements of the Government Claims Act

All claims for money damages brought against state entities must comply with the California Government Claims Act ("CGCA"), with certain exceptions not relevant here.[3] *See* Cal. Gov. Code § 905. At the pleading stage, a plaintiff must "allege facts demonstrating or excusing compliance with the claim presentation requirements." *A.L. v. Pleasanton Sch. Dist.*, No. 22-cv-03036-CRB, 2022 WL 16528141, at *5 (N.D. Cal. Oct. 28, 2022). As part of the claim presentation requirements, a plaintiff must deliver their claim to the clerk, secretary, or auditor of the public entity, or mail the claim to the public entity's clerk, secretary, auditor, or governing body. Cal. Gov. Code § 915. The public entity must either act upon or reject the claim before the plaintiff can sue. *See* Cal. Gov. Code § 945.4 ("[N]o suit for money damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ."). Compliance with the claim presentation requirements is an element of a cause of action against a public entity. *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1244 (2004).

Plaintiff's only remaining claims are for breach of contract and promissory estoppel, to the extent that such claims are premised on defendant District's alleged promises to provide alternate testing locations, audiobook-compatible materials, and extra time for exams. Defendants argue that these claims must be dismissed because plaintiff has failed to allege that she complied with the CGCA. (Doc. No. 9-1 at 13–14.) Specifically, defendants argue that

---

[3] In her opposition, plaintiff argues that "some of [her] state law claims, like her Civil Code § 51 claim, need not comply with the [CGCA]." (Doc. No. 16 at 8.) Plaintiff does not specify which other claims she is referring to in this regard or why such claims might be exempt from the CGCA, nor does she cite any authority to support her position. In fact, claims brought under Civil Code § 51 do need to comply with the CGCA. *Gatto v. Cnty. of Sonoma*, 98 Cal. App. 4th 744, 760–65 (2002). Moreover, plaintiff's only remaining claims are for breach of contract and promissory estoppel, and these claims are subject to the CGCA's claim presentation requirement. *A.L. v. Pleasanton Sch. Dist.*, No. 22-cv-03036-CRB, 2022 WL 16528141, at *5 (N.D. Cal. Oct. 28, 2022).

plaintiff has failed to allege that she delivered her claim to the clerk, secretary, or auditor of defendant District, or that she mailed her claim to defendant District's clerk, secretary, auditor, or governing body. (Doc. No. 9-1 at 14.)

Because plaintiff has not alleged her compliance anywhere in her complaint, the court concludes that plaintiff has not sufficiently alleged her compliance with the claim presentation requirements. In her opposition, plaintiff argues that her timely and detailed claim form is contained somewhere within Exhibit Two to her original complaint filed in state court (Doc. No. 1 at 98–127).[4] (*See* Doc. No. 16 at 7.) However, none of the documents in that page range of the exhibits attached to her complaint purport to be claim forms addressed to the defendant District. Curiously, there are documents at other locations within the exhibits attached to plaintiff's original complaint that do appear to be the required claim form addressed to the defendant District, though neither party has addressed these documents. (*See* Doc. No. 1 at 95, 194.) However, there is no document purporting to show the defendant District's rejection of plaintiff's claim. Plaintiff thereby fails to allege facts sufficient to support a reasonable inference of compliance with the CGCA's claim presentation requirement.

At the February 6, 2024 hearing, plaintiff's counsel stated that plaintiff could allege additional facts in support of her breach of contract and promissory estoppel claims in an amended complaint. Accordingly, plaintiff's breach of contract and promissory estoppel claims, to the extent that such claims are premised on the defendant District's alleged promises to provide alternate testing locations, audiobook-compatible materials, and extra time for exams, will be dismissed with leave to amend. *See Pleasanton*, 2022 WL 16528141, at *5–6 (granting the defendants' motion to dismiss the plaintiff's breach of contract claim "with leave to amend to

/////

/////

/////

---

[4] Plaintiff also states in her opposition that her claim form was filed on September 3, 2016. (Doc. No. 16 at 7.) This would appear to be a typographical error, as that date is years before any of the wrongful conduct alleged in plaintiff's complaint.

allege compliance with the presentation requirements" because "an allegation that the claim was acted upon is required to plead compliance").[5]

**CONCLUSION**

For the reasons explained above,

1. Defendants' motion to dismiss (Doc. No. 9) is granted, as follows:

    a. Plaintiff's claims against defendant Consumnes River College are dismissed without leave to amend;

    b. Plaintiffs' claims asserted against all remaining defendants for disability discrimination in violation of California Government Code § 11135; disability discrimination in violation of the Americans with Disabilities Act ("ADA") Title III, 42 U.S.C. §§ 12182, *et seq.*; disability discrimination in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*; intentional infliction of emotional distress; negligence; gross negligence; negligent infliction of emotional distress; and negligent hiring and retention (claims 1, 2, 4, 5, 6, 7, 8, 10, and 11) are dismissed without leave to amend;

/////

---

[5] Defendants also move to strike plaintiff's allegations regarding punitive damages under Rule 12(f) on the grounds that punitive damages are not recoverable against public entities. (Doc. No. 9-1 at 22–23.) Defendants also argue that plaintiff has failed to sufficiently allege conduct by defendant Beloglovsky that would support a claim for punitive damages. (*Id.*) The court notes that California law is clear that "a public entity is not liable for [punitive] damages." Cal. Gov. Code § 818. However, the court also notes that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010); *see also Rogers v. City of San Francisco*, 2024 WL 813444, at *3 (N.D. Cal. Feb. 23, 2024) (denying the defendants' request to strike the plaintiffs' request for punitive damages under Rule 12(f)) (citing *Whittlestone*, 618 F.3d 970). Instead, it appears that a motion to dismiss brought under Rule 12(b)(6) is the appropriate means by which to challenge a request for damages, including punitive damages, as barred as a matter of law. *See Gopinath v. SomaLogic, Inc.*, No. 23-cv-1164-W-WVG, 2023 WL 5354776, at *6 (S.D. Cal. Aug. 21, 2023) (adopting this view and observing that to hold otherwise would leave defendants "with no mechanism to challenge a [punitive] damage request like the one here since *Whittlestone* held that Rule 12(f) cannot be used for this purpose.") In any event, because defendants' motion to dismiss will be granted in its entirety, defendants' motion to strike will be denied as moot.

13

   c. Plaintiff's claims for breach of contract and promissory estoppel (claims 3 and 9) asserted against all of the remaining defendants, to the extent that such claims are premised on defendants' educational malfeasance, are dismissed without leave to amend;

   d. Plaintiff's claims for breach of contract and promissory estoppel (claims 3 and 9) asserted against all of the remaining defendants, to the extent that such claims are premised on defendants' alleged promises to provide alternate testing locations, audiobook-compatible materials, and extra time for exams, are dismissed with leave to amend;

   e. Plaintiff is granted leave to amend her complaint to include a claim for violation of Title II of the ADA;

2. Defendants' motion to strike (Doc. No. 9) is denied as moot;

3. The Clerk of the Court is directed to update the docket to reflect that defendant Consumnes River College has been terminated from this action;

4. Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a first amended complaint or a notice of her intent not to do so.

IT IS SO ORDERED.

Dated: **April 10, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE